UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
SIERRA CLUB, et al.,                      )
                                          )
       Plaintiffs,                        )
                                          )
v.                                        )     Civil Action No. 04-094 (RBW)
                                          )
MICHAEL O. LEAVITT,                       )
Administrator, United States              )
Environmental Protection Agency,          )
                                          )
       Defendant.                         )
_____ )

## MEMORANDUM OPINION

The plaintiffs have filed this action to "compel the . . . [Administrator of the

Environmental Protection Agency ("EPA"),] to take actions required by 40 C.F.R. § 80.1045."

Complaint for Declaratory and Injunctive Relief ("Compl.") ¶ 1.  This regulation provides that

"no later than July 1, 2003, the Administrator shall propose any requirements to control

hazardous air pollutants from motor vehicles and motor vehicle fuels that the Administrator

determines are appropriate pursuant to section 202(l)(2) of the Clean Air Act."  40 C.F.R.

§ 80.1045.  The defendant seeks to dismiss the plaintiffs' action on the ground that this Court

lacks subject matter jurisdiction to entertain this matter.[1]   For the reasons set forth below, this

Court will deny the defendant's motion.

_____

[1] Currently before the Court are (1) the United States' Motion to Dismiss and Memorandum in Support Thereof ("Def.'s Mem."); (2) the Opposition of Sierra Club and United States Public Interest Research Group to Defendant's Motion to Dismiss ("Pls.' Opp'n"); (3) the United States' Reply in Support of its Motion to Dismiss ("Def.'s Reply"); and (4) Surreply of Sierra Club and United States Public Interest Research Group in Opposition to EPA's Motion to Dismiss ("Pls.' Reply").

## I.   Background

In 1990, Congress passed the Clean Air Act Amendments of 1990, Pub. L. No. 101-549, 104 Stat. 2531 (1990) ("1990 Amendments" or "Amendments").  Section 202(l) of the 1990 Amendments required the EPA to complete a study of the need for and feasibility of mobile source air toxic regulations by May 15, 1992, and to promulgate regulations based on that study by May 15, 1995.  42 U.S.C. § 7521(l)(2).  After failing to meet these statutory deadlines, various groups brought suit against the EPA to compel it to comply with the 1990 Amendments.  See Sierra Club v. Browner, No. 95-1747 (RWR) (D.D.C. Sept. 13, 1995).  Shortly after the 1995 lawsuit was initiated, the EPA entered into a consent decree setting a schedule for agency action. Compl. ¶ 11; Def.'s Mem. at 2.  Consistent with the consent decree, the EPA issued a proposed rule in August 2000, 65 Fed. Reg. 48,058 (Aug. 4, 2000), and a Final Rule in March 2001.  66 Fed. Reg. 17,230 (March 29, 2001) (codified at 40 C.F.R. pts. 80, 86).  Section 80.1045 of this final rule is at issue in this case and it states the following:

> § 80.1045 What additional rulemaking will EPA conduct?
>
> No later than July 1, 2003, the Administrator shall propose any requirements to control hazardous air pollutants from motor vehicles and motor vehicle fuels that the Administrator determines are appropriate pursuant to section 202(l)(2) of the Act.  The Administrator will take final action on such proposal no later than July 1, 2004.  During this rulemaking, EPA also intends to evaluate emissions and potential strategies relating to hazardous air pollutants from nonroad engines and vehicles.

40 C.F.R. § 80.1045.  Because this regulation did not require any reduction in emissions of mobile source air toxics as required under the statute but rather deferred a decision on the matter, various groups petitioned the District of Columbia Circuit for review of the regulations adopted by the EPA.  See Sierra Club v. E.P.A., 325 F.3d 374, 377 (D.C. Cir. 2003).  The District of

Columbia Circuit largely upheld the regulations and in particular concluded that it was appropriate for the EPA, through the rulemaking process, to defer a rulemaking on controls to hazardous air pollutants from motor vehicles and motor vehicle fuel until a later time.  Id. at 380.

To date, the EPA has not commenced the rulemaking required by 40 C.F.R. § 80.1045. Accordingly, the plaintiffs have brought this action which seeks to have this Court "[d]eclare that [the EPA Administrator's] failure to propose [the] regulations described in 40 C.F.R. § 80.1045 by July 1, 2003 constitutes 'a failure of the Administrator to perform any act or duty under this chapter which is non discretionary with the Administrator' within the meaning of 42 U.S.C. §7604(a)(2)" and order that the defendant propose a regulation consistent with his duty under 40 C.F.R. § 80.1045.  Compl. ¶ 27.  The defendant now requests that this Court dismiss this case under Federal Rule of Civil Procedure 12(b)(1) on the ground that the "[p]laintiffs have failed to identify a mandatory statutory duty with which the EPA has not complied . . . ," thus depriving this Court of subject matter jurisdiction.  Def.'s Mem. at 1.

## II.    Standard of Review

Under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, "[t]he plaintiff bears the burden of persuasion to establish subject matter jurisdiction by a preponderance of the evidence."  Pitney Bowes, Inc. v. United States Postal Serv., 27 F. Supp. 2d 15, 19 (D.D.C. 1998).  In reviewing such a motion, this Court must accept as true all the factual allegations contained in the complaint.  Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993).  Additionally, in deciding a Rule 12(b)(1) motion, it is well established in this Circuit that a court is not limited to the allegations in the complaint, but may also consider material outside of the pleadings in its effort to determine

whether the court has jurisdiction in the case.  See EEOC v. St. Francis Xavier Parochial Sch.,

117 F.3d 621, 624-25 n.3 (D.C. Cir. 1997); Herbert v. Nat'l Academy of Sciences., 974 F.2d 192,

197 (D.C. Cir. 1992); Haase v. Sessions, 835 F.2d 902, 906 (D.C. Cir. 1987); Grand Lodge of

Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 14 (D.D.C. 2001).

### III.   The Parties' Arguments

The plaintiffs' contend that this Court has subject matter jurisdiction in this case under

either the citizen suit provision of the Clean Air Act, 42 U.S.C. § 7604(a)(2), or the

Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706.  Compl. ¶ 4.  Resolution of

whether this Court has subject matter jurisdiction in this case requires the Court to first interpret

42 U.S.C. § 7604(a)(2), which waives the government's sovereign immunity as to a claim

"against the Administrator where there is alleged a failure of the Administrator to perform any

act or duty under this chapter which is not discretionary . . . ."  42 U.S.C. § 7604(a)(2).  If

sovereign immunity is waived under 42 U.S.C. § 7604(a)(2), then this Court is vested with

subject matter jurisdiction over the plaintiffs' challenge.  However, if subject matter jurisdiction

is not vested in this Court through the Clean Air Act, this Court must then determine whether the

Administrative Procedure Act ("APA"), 5 U.S.C. § 701 et seq., vests subject matter jurisdiction

in this Court.

The defendant raises three arguments in support of his motion to dismiss.  First, the

defendant argues that the APA, specifically 5 U.S.C. § 702, does not provide an independent

basis for this Court to have subject matter jurisdiction in this case because the statute on which

the plaintiffs' claim is premised specifically precludes judicial review of the plaintiffs' claims.

Def.'s Reply at 2.  In addition, the defendant contends that the plaintiffs' reliance on 42 U.S.C.

§ 7604(a)(2) is misplaced because (1) the statute does not impose a "mandatory" obligation on the Administrator to take the action sought by the plaintiffs and (2) the Clean Air Act's citizen suit provision does not waive the United States' sovereign immunity regarding regulatory duties, whether mandatory or not.   Def.'s Mem. at 7-11.   The plaintiffs respond, arguing that the defendant's contentions are without merit because (1) the APA's waiver of sovereign immunity applies in this case as they are  seeking non-monetary relief,  Pl.'s Reply at 2, and (2), contrary to the defendant's contentions, 42 U.S.C. § 7604(a)(2) of the Clean Air Act does not preclude the relief they are seeking to obtain.  Id. at 5.

## IV.   Legal Analysis

The Court must begin its analysis by determining whether the Clean Air Act vests subject matter jurisdiction in this Court because if it does, an assessment of the Court's jurisdiction pursuant to the APA is unnecessary as subject matter jurisdiction under the APA only lies when "there is no other adequate remedy in a court."  5 U.S.C. § 704; see Bennett v. Spear, 520 U.S. 154, 161-62 (1997).  The essence of this analysis requires the Court to determine whether 42 U.S.C. § 7604(a)(2) waives the government's sovereign immunity such that the Court has subject matter jurisdiction in this case.  The answer to this question requires an interpretation of the statute and its associated regulations.   When construing these provisions, the Court is mindful that a waiver of sovereign immunity may not be implied, but rather, there must be an "'unequivocal expression'" of congressional intent to waive the Government's immunity.  Lane v. Pena, 518 U.S. 187, 192 (1996).  And, any waiver of sovereign immunity must be narrowly construed in favor of the government.  United States Dep't of Energy v. Ohio, 503 U.S. 607, 615 (1992).

"The primary and general rule of statutory construction is that the intent of the lawmaker is to be found in the language that he has used." United States v. Goldenberg, 168 U.S. 95, 102-03 (1897) (internal quotation marks omitted). "[I]t is an elementary principle of statutory construction that, in construing a statute, [this Court] must give meaning to all the words in the statute." Lewis v. Barnhart, 285 F.3d 1329, 1332 (11th Cir. 2002) (per curiam) (citations omitted) (emphasis in original). "[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." Lamie v. United States Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 1030 (2004) (internal quotation marks omitted). Thus, in such situations, "resort to legislative history is not appropriate in construing the plain statutory language." United States ex rel. Totten v. Bombardier Corp., 380 F.3d 488, 494 (D.C. Cir. 2004). If the plain meaning of the statute leads to an "absurd or futile result[], however, [the Supreme] Court has looked beyond the words to the purpose of the act." Perry v. Commerce Loan Co., 383 U.S. 392, 400 (1966) (quoting United States v. American Trucking Ass'ns, 310 U.S. 534, 543 (1940)). The District of Columbia Circuit has held that "literal interpretation need not rise to the level of 'absurdity' before recourse is taken to the legislative history, . . . [but] there must be evidence that Congress meant something other than what it literally said before a court can depart from plain meaning." Engine Mfrs. Ass'n v. E.P.A., 88 F.3d 1075, 1088 (D.C. Cir. 1996). When interpreting a statute, an agency's interpretation of the statute it is charged with administering is entitled to deference. Chevron U.S.A., Inc. v. Natural Res. Def. Council, 467 U.S. 837, 842-43 (1984). However, the Court owes no deference to an agency's interpretation of a statute that defines this Court's subject matter jurisdiction. Fox Television Stations, Inc. v. F.C.C., 280 F.3d 1027, 1038-39

(D.C. Cir. 2002) (citing <u>Adams Fruit Co. v. Barrett</u>, 494 U.S. 638, 650 (1990)).  Moreover, the

Court

> must give substantial deference to an agency's interpretation of its own regulations.  [The Court's] task is not to decide which among several competing interpretations best serves the regulatory purpose.  Rather, the agency's interpretation must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation.

<u>Thomas Jefferson Univ. v. Shalala</u>, 512 U.S. 504, 512 (1994) (inner quotations and citations

omitted).  Thus, this Court must "accord an agency's interpretation of its own regulations a 'high

level of deference,' accepting it 'unless it is plainly wrong.'" <u>Gen. Elec. Co. v. EPA</u>, 53 F.3d

1324, 1327 (D.C. Cir. 1995) (quoting <u>Gen. Carbon Co. v. OSHRC</u>, 860 F.2d 479, 483 (D.C. Cir.

1988)).  However, "[a]s the Supreme Court recently stressed, . . . judicial deference towards an

agency's interpretation 'is warranted only when the language of the regulation is ambiguous.'"

<u>In re Sealed Case</u>, 237 F.3d 657, 667 (D.C. Cir. 2001) (quoting <u>Christensen v. Harris County</u>,

529 U.S. 576 (2000)).

**A.     Does 42 U.S.C. § 7604(a)(2) Vest Subject Matter Jurisdiction in this Court?**

The plaintiffs' argue that this Court has subject matter jurisdiction over this action

pursuant to 42 U.S.C. § 7604(a)(2).  Compl. ¶ 4.  This provision states that "any person may

commence a civil action on his own behalf . . . against the Administrator where there is alleged a

failure of the Administrator to perform any act or duty under this chapter which is not

discretionary . . . ."  42 U.S.C. § 7604 (a)(2).  The defendant raises two arguments in support of

his contention that this Court does not have subject matter jurisdiction over the plaintiffs' claims

under this statutory provision of the Clean Air Act.  First, the defendant argues that an alleged

failure to perform a duty prescribed in a regulation, as opposed to the statute itself, does not fall

within the scope of the phrase, "duty under this chapter," and therefore this action cannot be maintained under 42 U.S.C. § 7604(a)(2), and second, any duty the Administrator has under the regulation was discretionary, not mandatory. Def.'s Mem. at 7-11. The Court will address each argument in turn, beginning with the latter.[2]

**(1)     Does 40 C.F.R. § 80.1045 Create a Mandatory Duty?**

Pursuant to the plain language of the Clean Air Act, a person may only bring an action in this Court to compel the Administrator to perform a duty that is "not discretionary." 42 U.S.C. § 7604(a)(2). Accordingly, the Court first must determine whether the duty established in 40 C.F.R. § 80.1045 is a mandatory duty or a duty that was merely discretionary. If the duty is discretionary, the statute does not vest subject matter jurisdiction in this Court, since only nondiscretionary duties vest such jurisdiction. This questions calls for an interpretation of the intent of the regulation, which is readily discernible from the language of the regulation itself. As already noted, the regulation at issue states:

§ 80.1045 What additional rulemaking will EPA conduct?

No later than July 1, 2003, the Administrator shall propose any requirements to control hazardous air pollutants from motor vehicles and motor vehicle fuels that the Administrator determines are appropriate pursuant to section 202(l)(2) of the Act. The Administrator will take final action on such proposal no later than July 1, 2004. During this rulemaking, EPA also intends to evaluate emissions and potential strategies relating to hazardous air pollutants from nonroad engines and vehicles.

40 C.F.R. § 80.1045. The words used in the regulation clearly indicate that the duty imposed on the Administrator is nondiscretionary, as it required the Administrator to propose a rule by July

---

[2] Both parties cite to portions of the legislative history to support their arguments. Def.'s Mem. at 11-13; Pls.' Opp'n at 16-18. Because this Court concludes that application of traditional tools of statutory interpretation leads to the conclusion that the statute is clear and unambiguous, the Court need not resort to an assessment of the statute's legislative history.

1, 2003, and to finalize it within one year thereafter.  The regulation can easily be dissected into

three distinct parts.  First, the regulation sets specific dates by which the Administrator must act

or designate that no action was needed.  Second, the regulation specifies what the Administrator

was required to do. And third, the regulation provides for a second specific date for a final

decision on what action should or should not be taken.  Specifically, as to the initial obligation,

the statute reads "[n]o later than July 1, 2003, the Administrator <u>shall</u> propose <u>any</u> requirements

to control hazardous air pollutants . . . ." 40 C.F.R. § 80.1045 (emphasis added).  The first part

of this clause, through the use of the word "shall," sets forth a mandatory duty—the

Administrator "shall" propose vehicular air pollutant controls by July 1, 2003.  <u>See</u> <u>Lexecon Inc.</u>

<u>v. Milberg Weiss Bershad Hynes & Lerach</u>, 523 U.S. 26, 35 (1998) ("[T]he mandatory

'shall,' . . .  normally creates an obligation impervious to judicial discretion").  The second

clause, and the remaining portion of the sentence, dictates what the Administrator shall propose,

specifically what if anything the substance of new regulation should address, "any requirements

to control hazardous air pollutants from motor vehicles and motor vehicle fuels that the

Administrator determines are appropriate pursuant to section 202(l)(2) of the Act."  Although the

first clause of the regulation seemingly sets a mandatory duty—to propose a regulation by July 1,

2003—the second clause immediately thereafter, by using the phrase "any requirement,"

provides the Administrator flexibility in determining the substance of the regulation.  <u>See, e.g.,</u>

<u>Env't Defense Fund v. Thomas</u>, 870 F.2d 892, 898-99 (2nd Cir. 1989) ("The words 'as may be

appropriate' clearly suggest that the Administrator must exercise judgment and the presence of

'shall' in the section implies only that the district court has jurisdiction to order the Administrator

to make <u>some</u> formal decision whether to revise the [regulations], the content of that decision

being within the Administrator's discretion . . . .").  Moreover, even though the agency has

discretion to promulgate "any" regulation it deems appropriate, "[i]t is rudimentary

administrative law that discretion as to the substance of the ultimate decision does not confer

discretion to ignore the required procedures of decisionmaking."  Bennett, 520 U.S. at 172.

Finally, the regulation designates a subsequent mandatory date by which the Administrator's

action must be finalized, namely, that "[t]he Administrator will take final action on such proposal

no later than July 1, 2004."  40 C.F.R. § 80.1045 (emphasis added).  Accordingly, when

construed collectively, the plain language of the regulation imposes a nondiscretionary duty on

the Administrator to either affirmatively act or decide that no action was needed.

The defendant asserts that the regulation simply sets forth a schedule for the exercise of

discretionary authority.  Def.'s Mem. at 14.  To support this interpretation, the defendant focuses

on the following emphasized phrases of the regulation.  "No later than July 1, 2003, the

Administrator shall propose any requirements to control hazardous air pollutants . . . that the

Administrator determines are appropriate . . . ."  66 Fed. Reg. at 17,272-73 (emphasis added).

Through the use of this language, the defendant opines that the regulation supposes that before

any regulation is issued, the EPA would first have to demonstrate that the regulation was

appropriate and thus this supports his conclusion that the regulation establishes a discretionary

duty.  Def.'s Mem. at 14.  The defendant's interpretation of the regulation is inconsistent with

existing case law.  In Env't Defense Fund, the Second Circuit was asked to determine whether

section 109(d) of the Clean Air Act established a mandatory or discretionary duty.  This section

stated that "[n]ot later than December 31, 1980 . . . the Administrator shall complete a through

review of the criteria published under section 108 . . . and promulgate such new standards as may

be appropriate . . . ." Env't Defense Fund, 870 F.2d at 898 (emphasis added).  The government

argued that the phrase "as may be appropriate" created a wholly discretionary duty to promulgate

new standards.  Id.  The Second Circuit disagreed and concluded that

> [a]lthough the district court does not have jurisdiction to order the Administrator to make
> a particular revision, we cannot agree with [the government] that the Administrator may
> simply make no formal decision to revise or not to revise, leaving the matter in a
> bureaucratic limbo subject neither to review in the District of Columbia Circuit nor to
> challenge in the district court.

Id. at 900.  Thus, the Second Circuit held that the district court had jurisdiction "to compel the

Administrator to take some formal action, employing rulemaking procedures, either revising the

[regulations] or declining to revise them."  Id. (internal citation omitted).  The District of

Columbia Circuit has adopted the Second Circuit's reasoning that the statutory provision

construed in Env't Defense Fund "set[s] forth a bright-line rule for agency action." Am. Trucking

Ass'ns v. E.P.A., 175 F.3d 1027, 1047 (D.C. Cir. 1999) (quoting Am. Lung Ass'n. v. Reilly, 962

F.2d 258, 263 (2nd Cir. 1992) (citing with approval Env't Defense Fund, 870 F.2d at 897)),

rehearing granted in part on other grounds, denied in part, 195 F.3d 4 (D.C. Cir. 1999), rev'd in

part on other grounds, aff'd in part sub nom., Whitman v. Am. Trucking Ass'ns, 531 U.S. 457

(2001).  While these cases interpret a statutory provision under the Clean Air Act rather than a

regulation, and the language the government argued created discretionary duties is slightly

different than the language at issue here, these cases clearly support this Court's conclusion that

40 C.F.R. § 80.1045 establishes a mandatory duty to promulgate a regulation or indicate a

decision not to do so.  Moreover, the defendant's reading of this regulation is simply too narrow

and does not take into account the regulation in its entirety.  While § 80.1045 does use a

discretionary-like phrases when discussing the Administrator's obligations, such discretionary

11

language is not present in a later portion of the regulation which states that "[t]he Administrator
will take final action on such proposal no later than July 1, 2004."  (emphasis added).  Again, this
later provision uses mandatory language and establishes another operative date with which the
Administrator must comply.  Reading the regulation as a whole, it is clear that it creates a
mandatory duty for the Administrator to propose a regulation or to articulate a decision not to do
so by July 1, 2003, and to finalize that decision by July 1, 2004.

In addition, in arguing that the regulation does not create a mandatory obligation, the
defendant places great weight on the case Bhd. of Ry. Carmen Div. v. Pena, 64 F.3d 702, 704
(D.C. Cir. 1995), which concluded that the word "shall" can sometimes have discretionary
connotations.  Def.'s Reply at 13-14.  At first glance, this case appears dispositive.  In Pena, the
District of Columbia Circuit Court considered whether the Federal Railroad Administration
("FRA") retained authority to act under a regulation after the deadline listed in the regulation had
passed.  Pena, 64 F.3d at 705-06.  The Court held that the FRA regulation, which stated that
"[e]ach petition [for reconsideration of a final rule] shall be decided not later than 4 months after
its receipt by the Docket Clerk," was a discretionary deadline and thus the agency was permitted
to act even after the four month deadline had passed.  Id. at 704 (quoting 49 C.F.R. § 211.3(a))
(emphasis in original).  In making this determination, the Circuit Court relied on Supreme Court
cases and its own precedent in concluding that "the mere use of the word 'shall'" is insufficient
to establish a mandatary obligation, and that where regulations do not specify a consequence for
failing to adhere to timing provisions, courts "will not in the ordinary course impose their own
coercive sanction."  Id.  The defendant's reliance on this case is misplaced.  In Pena, the plaintiff
sought to inhibit the power of an agency to take action after a deadline in the regulation had

passed, as opposed to the situation in the case at bar, where the plaintiffs are seeking to compel the agency to act after the regulatory deadline has elapsed. Accordingly, Pena is simply not analogous to the case at hand.

Finally, the defendant appears to argue that the EPA has previously interpreted the regulation at issue as creating only a discretionary duty and thus this Court must defer to the agency's interpretation. Def.'s Mem. at 14-15. As support for this argument, the defendant relies on 66 Fed. Reg. 17,259, which states that "[t]he regulation adopted today establishes a rulemaking schedule for exercise of [the] EPA's discretionary authority under section 202(l)(2), which directs EPA 'from time to time revise' regulations under that provision." As an initial matter, because the language of the regulation is unambigious, this Court owes no deference to the agency's interpretation of this regulation. See In re Sealed Case, 237 F.3d at 667. Moreover, despite the defendant's contention otherwise, the language on which he relies does not indicate that the regulation creates a discretionary duty, only that the regulation was being adopted pursuant to a statute that imposed a discretionary obligation. This distinction is important. The EPA can impose upon itself "more rigorous substantive and procedural standards" than required by statute and if it does so, it must abide by those stricter requirements. Cf. Service v. Dulles, 354 U.S. 363, 388 (1957); see Center for Auto Safety v. Dole, 846 F.2d 1532, 1534 (D.C. Cir. 1988) (citing Service, 354 U.S. at 388). For example, the Supreme Court in Service declared that the Secretary of State was required to comply with his own regulations even if those regulations created a duty that was greater than what was required by statute. Service, 354 U.S. at 388.[3]

---

[3] The defendant contends that the unreasonable delay provision in 42 U.S.C. § 7604(a) is the proper way to challenge the EPA's failure to act in this case. Def.'s Reply at 12. However, because the regulation created a

(continued...)

This appears to be exactly what the EPA did here.  That is, even though the statute itself proscribes a discretionary duty, the EPA promulgated a regulation with a mandatory one. Accordingly, the EPA's argument is without merit because the evidence cited by the agency simply does not support its position.  Moreover, this Court can find no other legal support for the defendant's position.

Even if this Court were to accept the defendant's claim that the aforementioned provision of the Federal Register makes clear that the EPA believed the regulation created a discretionary duty, a separate provision of the Federal Register seemingly indicates that the EPA interpreted the regulation to create a mandatory duty.   66 Fed. Reg. 17,259 notes that

> [s]everal commenters urged [the] EPA not to include a commitment to a future rulemaking in the regulations.  These commenters argued that it was premature to commit to a rulemaking before [the] EPA had completed the Technical Analysis Plan and that a future rulemaking could be a waste of resources if [the] EPA determines no further controls are appropriate.  Several commenters also questioned [the] EPA's authority to commit future administrations to such a rulemaking.

Id.  In response to these commenters, the EPA did not contend that they had misconstrued the regulation.  Nor did the EPA enunciate that it interpreted the regulation to create only a discretionary duty and therefore the time and resources of the administration at the time (or any future administration) would only be expended if a determination was made that subsequent rulemaking was necessary.  Rather, the agency simply responded that it "continues to believe the

---

[3](...continued)

mandatory duty, this is a suit to compel that the duty be performed, as opposed to a suit based on unreasonable delay by an agency to take action.  Cf. Am. Lung Ass'n v. Reilly, 962 F.2d 258, 262-63 (2nd Cir. 1992) ("when the administrator misses a statutorily-imposed deadline, his failure is not reviewed on a 'reasonableness' basis.  Only when a statute requires agency action at indefinite intervals, such as 'from time to time', can 'unreasonable delay' be a meaningful standard for judicial review.").  Thus, contrary to the defendant's contentions, 42 U.S.C. § 7604(a), which permits a citizen to challenge an unreasonably delay, would not be the proper statute upon which to bring this case.

regulatory commitment in section [80.1045] is reasonable and entirely within EPA's authority." Id.  This response suggests that the EPA disagreed with the concerns raised by these commenters. Thus, it appears that the EPA believed when adoption of this regulation was being considered, that it could commit a future administration to engage in rulemaking.  And if the EPA believed they could commit a future administration to engage in rulemaking, this would clearly tend to indicate that it believed that the duty set forth in the regulation was mandatory.  Thus, a review of the Federal Register furnishes conflicting interpretations of the regulation and therefore provides no real guidance in its interpretation.  Nevertheless, because the regulation clearly and unambiguously establishes a nondiscretionary duty, the Court need not look any further to discern the agency's interpretation.  In re Sealed Case, 237 F.3d at 667.   Accordingly, this Court concludes that the duty established in 40 C.F.R. § 80.1045 is not discretionary.[4]

### (2)    Can a Regulation Create a Duty Actionable Under 42 U.S.C. § 7604(a)(2)?

A party may only bring an action under 42 U.S.C. § 7604(a)(2) if the Administrator fails "to perform any act or duty under this chapter which is nondiscretionary . . . ."  (emphasis added). This Court has already held that the Administrator had a nondiscretionary duty to act under 40 C.F.R. § 80.1045.  Thus, the second question this Court must address is whether the duty created by the regulation is encompassed within the phrase "under this chapter" as used in the Clean Air

---

[4]  The Court also notes that this interpretation furthers the underlying goal of section 202(l) of the 1990 Amendments, which required the EPA to complete a study of the need for and feasibility of mobile source air toxic regulations by May 15, 1992, and to promulgate regulations based on that study by May 15, 1995.  42 U.S.C. § 7521(l)(2).  As noted earlier in this opinion, such regulations were never issued, but rather the EPA promulgated 40 C.F.R. § 80.1045, which stated that such regulations or a decision not to issue them would be forthcoming on specified dates.  If this Court ruled that there was no mandatory duty to promulgate regulations under § 80.1045 or specifically decline to do so, then the EPA would have never have to take any action to be in compliance with section 202(l) of the 1990 Amendments.  Such a result would be contrary to Congress' intent as it would render section 202(l) meaningless since the EPA would not have to comply with section 202(l)'s mandates.  Moreover, such a ruling would allow the EPA to avoid any public comment and challenges to its decision, which would be counter to basic administrative law principles.

Act.  The Court notes at the outset that because the Clean Air Act itself defines the jurisdiction of

this Court, the agency's interpretation is entitled to no deference.  See Fox Television Stations,

280 F.3d at 1038-39.  Again, this second question presents an issue of pure statutory

interpretation.  The defendant opines that the Clean Air Act's citizen suit provision only permits

actions which are based on duties imposed by the Act itself, as opposed to authorizing actions

arising out of duties created by regulations promulgated under the Act.[5]  To support his

argument, the defendant relies heavily on a case from the First Circuit, Maine v. Thompson, 874

F.2d 883 (1st Cir. 1989).  Moreover, the defendant contends that the structure of the Clean Air

Act mandates the conclusion that the only duties arising directly from the statutory provisions of

the Act itself are properly actionable under 42 U.S.C. § 7604(a)(2).  To support this argument,

the defendant relies principally upon the structure of § 7604(a)(2) as compared to the structure

and substance of § 7607(b)(2).  The plaintiffs, also relying on the structure of the Clean Air Act,

contend that the § 7604(a)(2) permits citizen suits arising from duties imposed by regulations

promulgated under the Act.  The Court will first address the positions espoused by the defendant.

    In Maine v. Thompson, the First Circuit addressed the EPA's duty pursuant to the Clean

Air Act to address an atmospheric condition known as "regional haze."  Maine, 874 F.2d at 885.

The facts in Maine are substantially similar to the facts here, however, the EPA reliance on the

case is misplaced.  Under consideration there was 42 U.S.C. § 7491, which required the EPA to

promulgate regulations concerning "regional haze" by August 1979.  When the EPA failed to

comply with this nondiscretionary statutory deadline, various citizen groups brought suit to

_____

[5]  The defendant does not, nor can he, argue that the regulation at issue in this case was not promulgated pursuant to the Clean Air Act.  In fact, the regulation states on its face that it was issued "pursuant to section 202(l)(2) of the Act."

compel that action be taken.  Id. at 886.  Shortly after the lawsuit was filed, the EPA entered into

a consent decree agreeing to issue certain regulations in 1980.  Id. at 885.  The 1980 regulations,

however, at least as to regional haze, "amounted to the Agency's promise to deal substantively

with the matter in future rules and orders."  Id.  Six years later, another lawsuit was brought

against the EPA under the citizen suit provision of the Clean Air Act.  Id. at 886.  The question

before the First Circuit in Maine was whether the "EPA's 1980 promise comprised a 'final action

taken' for purposes of 42 U.S.C. § 7607(b)."  Id.  If it was a final action, then the plaintiffs were

required to challege the regulations within 60 days of its issuance in the District of Columbia

Circuit.  Id.  If it was not, then jurisdiction to compel any mandatory statutory duty was proper in

the district court.  Id. at 866 n.5.

The First Circuit held that the regulations constituted final agency action and thus the

district court did not have subject matter jurisdiction to entertain the case.  Id. at 888.  Moreover,

the court, when considering if there were additional deadlines that could form the basis for an

unfulfilled mandatory duty, noted in a footnote that the

> EPA fulfilled its statutory duty here; its recalcitrance, if any, lies not in its failure to meet
> a deadline imposed by Congress, but rather in a failure to meet self-imposed regulatory
> deadlines, premised on event-specific and technological happenings, regulatory deadlines
> which the Agency created in the course of meeting the statutory deadline. Such regulatory
> duties are perhaps nondiscretionary, but they are not statutory nondiscretionary duties;
> hence, they are not proper grist for the section 7604 mill.

Id. at 888 n.7.  The defendant in this case places significant weight on this footnote, contending

that the First Circuit held directly that regulations, such as the ones in this case, are not the proper

basis for invoking the citizen suit provision in 42 U.S.C. § 7604 of the Clean Air Act.  Def.'s

Mem. at 9-10.  Contrary to the defendant's contention, the First Circuit has made no such

pronouncement.  The District of Columbia Circuit, after reviewing <u>Maine v. Thompson</u>, declared

that footnote 7 of <u>Maine</u>, upon which the EPA relies, is merely "dicta in a footnote." <u>Nat'l</u>

<u>Wildlife Fed. v. Browner</u>, 127 F.3d 1126, 1129 n.5 (D.C. Cir. 1997).  The Court also noted that

the "EPA's contention that only a duty imposed by the Clean Water Act itself can support a

citizen suit appears to be an issue of first impression." <u>Id.</u>  Thus, <u>Maine</u> is of little value to the

analysis of the case at hand and is hardly dispositive.

The Court also finds no merit in the defendant's second argument concerning the

structure of the Clean Air Act.  As support for its argument that the clause "under this chapter" as

used in the Clean Air Act references only statutory duties, the defendant contends that 42 U.S.C.

§ 7607(b)(2) directly addresses nondiscreationary statutory actions and provides a mechanism to

challenge the Administrator's deferral of such actions as part of a final agency regulation.  Def.'s

Mem. at 10.  Namely, § 7607(b)(2) states that "[w]here a final decision by the Administrator

defers performance of any nondiscretionary statutory action to a later time, any person may

challenge the deferral pursuant to paragraph (1) . . . ."  According to the defendant, while this

section provides for a review of the EPA's decision to defer some actions to a late date, it does

not provide for an action to compel such actions.  Thus, the defendant argues that reading § 7604

and § 7607 together demonstrates that Congress did not intend to create an action under §

7604(a)(2) to compel action in accordance with duties created pursuant to EPA regulations.

Def.'s Mem. at 10.

The defendant's analysis is flawed for several reasons.  First, § 7607(b)(2) specifically

refers only to "nondiscretionary <u>statutory</u> duties."  This case does not involve a nondiscreationary

statutory duty, but rather a nondiscretionary regulation created duty, thus § 7606(b)(2) is not

applicable to this case.  Second, the defendant's interpretation too narrowly construes the several

citizen suit provisions as a whole.  Each provision of the Clean Air Act that authorizes citizen

suits has a specific purpose.  For example, § 7607(b)(2) permits an action which challenges the

deferral of a nondiscretionary duty pursuant to § 7607(b)(1).  If such action is successful, the

deferral can be vacated.  See, e.g., Davis v. E.P.A., 348 F.3d 772 (9th Cir. 2003) (vacating an

EPA order pursuant to the Court's jurisdiction under 42 U.S.C. § 7607(b)(1)).  Once vacated, an

action to compel performance of the underlying nondiscretionary duty can be maintained under

§ 7604(a)(2).  Additionally, in cases where the agency has unreasonably delayed the

promulgation of a regulation, a challenge can be brought pursuant to § 7604(a).  Thus, there is no

basis for the defendant's narrow interpretation of the Clean Air Act's citizen suit provision.

      This Court concludes that although the phrase "under this chapter" as used in the Clean

Air Act is not defined, its meaning is readily descernable through the application of traditional

tools of statutory construction.  The phrase, "under this chapter," is used pervasively throughout

the Clean Air Act.  See, e.g., 42 U.S.C. § 7478(a) ("applicable regulations under this chapter");

7479(3) ("subject to regulation under this chapter"); 7503(a)(3) ("applicable emission limitations

and standards under this chapter"); 7506(c)(2) ("applicable implementation plan in effect under

this chapter"); 7515 ("issued by the Administrator under this chapter"); 7604(a)(1) ("an emission

standard of limitation under this chapter"); 7661a(b)(5)(A) ("standard, regulation or requirement

under this chapter").  Thus, so long as there is no reason to believe that Congress intended the

phrase "under this chapter" to have different meanings in the various provisions of the Clean Air

Act, "[t]he interrelationship and close proximity of these provisions of the statute presents a

classic case for application of the 'normal rule of construction that identical words used in

different parts of the same act are intended to have the same meaning.'" <u>Comm'r of Internal</u> <u>Revenue v. Lundy</u>, 516 U.S. 235, 249-50 (1996).

Upon examination of the various statutory provisions of the Clean Air Act, it is clear that the phrase "under this chapter" encompasses both the statutory obligations imposed in the Act itself, and the regulatory obligations promulgated under the auspices of the Act.  First, support for this conclusion is found in a different subsection of the very statutory provision at issue in this case.  42 U.S.C. § 7604(a)(1) provides that a citizen may bring suit against any person who has violated "an emission standard or limitation under this chapter."  In 42 U.S.C. § 7604(f), "emission standard or limitation under this chapter" is defined to include various regulatory enactments.  <u>See, e.g.</u> 42 U.S.C. § 7604(f)(3) (defining "emission standard" to include regulatory standards set for fuel and fuel additives).  A review of other provisions of the Clean Air Act lead to the same conclusion.  For example, 42 U.S.C. § 7478 states that "[u]ntil such time as an applicable implementation plan is in effect for any area . . .to prevent significant deterioration of air quality with respect to any air pollutant, <u>applicable regulations under this chapter</u> prior to August 7, 1977, shall remain in effect . . . ."  42 U.S.C. § 7478 (emphasis added).  A literal reading of § 7478 demonstrates that Congress viewed earlier regulations as being considered "under this chapter."  Moreover, § 7661a requires the Administrator to promulgate regulations and one provision in this section mandates that such regulations shall include a requirement that any air pollution control agency has the power to "issue permits and assure compliance by all sources required to have a permit under this subchapter with each applicable standard, regulation, or requirement under this chapter." § 7661a(b)(5)(A).  Again, on its face, this provision considers regulations as falling within the phrase "under this chapter."  These statutory provisions make

clear that regulations promulgated under the auspices of the Clean Air Act were considered by Congress to fall under the Act (or a specific chapter of the Act) itself.  Accordingly, applying the classic tool of statutory construction which dictates that "identical words used in different parts of the same act are intended to have the same meaning" calls for the conclusion that the phrase "under this chapter" includes not only statutory duties but also duties created by regulations promulgated pursuant to the Clean Air Act.  Lundy, 516 U.S. at 249-50.

The defendant contends that reliance on other provisions of the Act is inappropriate because had Congress wanted to define "under this chapter" in the same manner as other similarly worded sections of the Act, it knew how to do so and could have done so if that was its intentions.  Def.'s Reply at 9.  This argument is without merit.  While it would have clearly made this Court's job easier if Congress had defined what "under this chapter" means, its consistent usage throughout the Act makes clear its ultimate meaning.  In the instances where Congress expounded on the definition, it did so for a particular purpose.  For example, under 42 U.S.C. § 7604, it specifically listed the type of regulatory enactments that should be considered for determining emissions standards and limitations.

Moreover, when Congress intended to limit the definition of a term to only the Act itself, it used the phrase "in this chapter," rather than "under this chapter."  For example, the statutory provision which defines various terms used in the Act, limits those definitions to situations when they are "used in this chapter."  42 U.S.C. § 7602.  Section 7661c also presents a clear example of when Congress wanted language in the Act to be limited to the statutory provisions in the Act itself.  Section 7661c(b) provides that "[t]he Administrator may by rule prescribe procedures and methods for determining compliance and for monitoring and analysis of pollutants regulated

21

under this chapter . . . [but] [n]othing in this subsection shall be construed to affect any

continuous emissions monitoring requirement of subchapter IV-A of this chapter, or where

required elsewhere <u>in this chapter</u>." <u>Id.</u> (emphasis added). Clearly, the structure of this provision

indicates that while the Administrator may promulgate regulations, such regulations cannot

trump provisions of the statute. This makes perfect sense and is consistent with established

administrative law that prevents an agency from promulgating regulations that are contrary to

statutory authority. 5 U.S.C. § 706(2)(A) (requiring the Court to set aside an agency action that

is contrary to the law).

   Based upon the foregoing, it is clear that the plaintiffs properly brought this action under

the citizen suit provision of the Clean Air Act. Accordingly, this Court need not determine

whether the APA applies "because the APA by its terms independently authorizes review only

when 'there is no other adequate remedy in a court.'" <u>Bennett</u>, 520 U.S. at 161-62.

## V.   Conclusion

   For the foregoing reasons, this Court concludes that (1) the plain language of 40 C.F.R.

§ 80.1045 create a nondiscretionary duty requiring the Administrator to act by specified dates and

(2) the plain language of 42 U.S.C. § 7604(a)(2) permits regulations to be challenged pursuant to

the "under this chapter" clause of the statute. Thus, because the regulation in question creates a

nondiscretionary duty under § 7604(a)(2), there has been an express waiver of the EPA's

sovereign immunity and therefore this Court has subject matter jurisdiction over this case.

Accordingly, the defendant's motion to dismiss must be denied.

**SO ORDERED** this day of 9th day of February, 2005.[6]


REGGIE B. WALTON
United States District Judge

---

[6] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.